Biehler and others vs. Coonce.

---

## BIEHLER AND OTHERS vs. COONCE.

1. The tabular statement of the books of the Recorder of land titles, shewing the confirmation of a lot, its size, &c., are admissible as evidence.

2. Evidence of occupation, cultivation and possession of a lot, previous to 20th December, 1803, shewing a right to a confirmation, are as good evidence as the certificate of confirmation.

3. It is error in a Judge on refusing an instruction, to accompany it with remarks calculated to mislead the jury.

### ERROR to St. Charles.

Wm. M. Campbell, for Plaintiff in error.

#### POINTS.

The plaintiff contends :

1. The jury must be supposed to have taken the law from the court, and if misled by the court as to the law that governs the case, they erred in a matter of law.

2. The statements of the Judge in this case, were calculated to mislead the jury as to the construction of the law and the legal right of the plaintiff to recover.

3. The evidence in this case affords no warrant for the jury to find that McDonough street ran through the land possessed by defendants below; unless the jury were misled by the illegal declaration that it might have been a street in contemplation.

Bates, for Defendant in error.

Napton, J., delivered the opinion of the court.

Felix Coonce, the defendant in error, brought an action of ejectment to recover a lot in the town of St. Charles, against Biehler, Grater & McIntosh, and Emilie Chauvin, administratrix of F. D. Chauvin, deceased, was admitted to defend the suit. The lot was described in the declaration, as 240 feet French measure in front, by 300 feet in depth, bounded on the west by Main street, on the north by McDonough street, on the south by Chauncy street, and on the east by the sand bar of the Missouri river. A trial was had in the St. Charles circuit court in 1839, and a verdict for the plaintiff for 79 feet 3 inches on Main street, running with that breadth to the river. Upon the application of the defendant below, a new trial was granted, and a similar verdict was again found upon the second trial, upon which the court gave judgment.

The plaintiff, to support his claim, gave in evidence a certificate from the Recorder of land titles, Theodore Hunt, dated 7th May, 1825,

for the lot described in the declaration, which certificate was given by virtue of the act of Congress of 1824, supplementary to the act of 13th June, 1812. The lot was confirmed to John Coonce, and the plaintiff then exhibited his deeds showing a derivative title from the admitted heirs of John Coonce. The plaintiff further proved the possession by the defendants, Beihler, Grater & McIntosh, of part of the lot, as tenants under Emelie Chauvin. The testimony of Cunningham, the county surveyor of St. Charles co., was also introduced, and a survey which said Cunningham had made by order of the court in this case. The survey is not, however, to be found in the bill of exceptions. This witness testified that he had at different times made partial surveys of the streets and lots in the town of St. Charles, by order of the board of trustees of said town, and occasionally at the instance of private individuals; that he had never seen any official survey of the town, nor has any such plat or survey been in the possession of the board of trustees since he has been living in the place. The plan pursued by him in surveying, has been to find some point generally acknowledged and recognized in said town, and thence to run by the best statement of courses and distances he could obtain, until he found the lot or street desired. The witness had seen plats of surveys of the streets of said town, said to have been made by Joseph Evans and Nathan Boone; that there was formerly in possession of the board of trustees a plat which was on a blank leaf of a record book of said board, which had the streets laid off on it, and which said board used and recognized in doing business for said town. Witness presumes that the plat was made by said Evans about 20 years since, but does not know it; that the plat of Boone is nearly a copy of said plat of Evans. Witness used these plats in his surveys of the town. The witness then stated that the survey made in the present case was made upon these data, and that if his premises were correct, McDonough street was 69 feet 3 inches north of the line claimed by the defendants as the boundary of their lot. That by this survey McDonough street would run through two of the houses of defendant; that the 69 feet 3 inches which would fall on the plaintiff's lot, would also take in one of the brick tenements claimed by defendants, and some other frame buildings. Witness in making surveys, sometimes departed from the plat, and was regulated by the confirmations of the squares; most generally, however, he pursued the plat without reference to the size of the squares, or lots, as called for by the confirmations, the breadth of the squares in St. Charles, not generally corresponding with the breadth confirmed to the proprietors. The distance between the streets as used, is generally much greater than the

tance called for in the confirmations of the squares and half squares; the squares being generally confirmed as having 240 feet, French measure, in front, whereas some of them are actually more than 400 feet in front. The witness thought that if a survey was commenced at either end of the town, or at any given point therein, and the streets and squares laid off according to the front called for in the confirmation, the position of the cross streets would be entirely changed, and would not any where correspond with the streets and squares as now used and recognized.

Another witness on the part of the plaintiff, testified in relation to Evan's survey, and sated that no street or road had ever been used within his knowledge, (and he came to St. Charles in 1809,) at the place where McDonough street is claimed to be by the plaintiff; but that the plat of Evans had always been referred to by the board of trustees, (of which he had been twice a member,) whenever the position of the streets, &c., of St. Charles was desired to be ascertained.

The defendant offered in evidence a copy of an extract from the registry of confirmations by the Recorder of land titles, being a confirmation to Charles Tayon, on the 6th April, 1825, of a lot in the town of St. Charles, bounded on the south by McDonough street, west by Main street, north by Water street, and east by the Missouri River, 240 feet front. This certified copy was rejected. Copies of deeds from Tayon to W. J. Devore, and from Devore to D. McNair, and from McNair to Chauvin, were also offered in evidence, but rejected.

The defendant proved by Thomas Gilmore, that as far back as 1801, Charles Tayon lived on the premises now claimed by Coonce's representatives; that his enclosure reached within a few yards of the branch called Blanchette, and between it and the branch there was a road used to go down to the river, the ferry landing being immediately east of Tayon's house; that this enclosure of Tayon, which embraced his dwelling house and several out-houses, garden, &c., extends nearly to the spring branch on the northern extremity of his lot; that the buildings and improvements at that time appeared to be old; that said Tayon claimed and occupied said premises as his own; and when the old pickets which separated his enclosure from the road going to the ferry, became decayed, he built a new fence on the same line. Witness knew of no street or road passing through this lot, and never heard any spoken of. Witness knew Coonce's lot, and was once offered it by Coonce, who was about to sell it, in consequence of ill health. Coonce had no improvements on it, except a mill and hay shed, and he was told by Coonce that his mill was on the lower edge of his lot. Witness

Biehler and others vs. Coonce.

never heard Coonce lay any claim to any ground north of said branch on which his mill was, nor did he ever hear him object to Tayon's claim.

Another witness testified that he had known the lot for forty years; that when he first knew it, it was claimed and occupied by Charles Tayon; that his enclosure extended from very near the branch Blanchette to the spring branch on the north. In relation to Coonce's lot, he testified about the same as the other witness; that his improvements did not extend north of the Blanchette branch; and that he never heard him claim any ground north of that branch, or dispute Tayon's claim. Much other testimony was given to the same purpose. The defendant asked the court to instruct the jury, that in order to prove that any part of the premises possessed by the defendants was south of McDonough street, as claimed by the plaintiff, the plaintiff must prove that such a street has been established by some lawful authority, or that a street had been recognized at the place where the plaintiff now claims McDonough street, by long usage or public notoriety. This instruction the court refused to give, but stated to the jury that it might be a street merely in contemplation. The plaintiff then moved the court to instruct the jury that no evidence had been given to rebut the claims of John Coonce to the premises in controversy. The court refused to give said instruction, and stated as a reason therefor, in the presence of the jury, that by possibility some evidence of rebuttal might have been given, which has not been heard or recalled by the court. The defendant excepted to this declaration of the court, and afterwards moved for a new trial, which was refused.

The grounds upon which this judgment is sought to be reversed are, first, the exclusion of certain evidence offered by the defendants, and secondly, the instructions refused, and observations made by the judge in the presence of the jury.

The first question is one of no practical importance in the decision of this cause. For though the court excluded the copies of extracts from the books of the Recorder of land titles, showing that a lot of the description, size and boundaries claimed by the defendants had been duly confirmed under the act of 25th May, 1824, yet ample evidence was afterwards given that such a lot had been occupied, cultivated and possessed by Charles Tayon, previous to the 2d Dec. 1803, sufficient to bring him within the provisions of the act of 13th June, 1812. In the case of Janis's adm'r vs. Gurno, whilst this court considered the certificate issued under the act of 1824, as *prima facia* evidence of a confirmation under the act of 1812, it was not regarded as conclusive, and proof before the court of all the circumstances and facts necessary to

make out a claim under the first act, it was believed would be quite as satisfactory as the certificate of the recorder.   Upon what ground the tabular statements contained in the Recorder's books were excluded, does not appear, but it is presumed that the court excluded them, because the act had provided for the issuing of a certificate, which certificate would be, it may be thought, the best evidence of the confirmation.   The tabular statements from the books of the Recorder, it may be observed, have been frequently admitted in evidence without question, and when questioned, their admissibility has been sanctioned by this court.   Roussin vs. Parks, 8 Mo. R.

It seems from the testimony which we refer to, merely with a view to ascertain the propriety of the instructions, that Chas. Tayon inhabited, cultivated and possessed a lot in the town of St. Charles, as far back as 1801, and continued to inhabit, cultivate and possess the same until after the change of government; that John Coonce, from whom the plaintiff derives title, also occupied a lot adjoining, and subsequently in 1825, obtained a certificate from the Recorder of land titles for the said lot, under the act of the 13th June, 1812.   It will also be seen, if we are at liberty to look into the evidence which the defendants before offered, but which was rejected, that each of these claimants had their claims allowed under the act of Congress of May 26, 1824, and the certificates issued to each, calling for McDonough street as the boundary between their lots.

The only matter in dispute between the parties is the locality of McDonough street.

That this street never had been in actual use, appears from the testimony of the witnesses on both sides.   That no public highway of any description ever passed where the plaintiff now claims McDonough street to be, and that none was ever supposed to pass there by either Tayon or Coonce, may be easily inferred from the testimony.   Must it not then devolve on the plaintiff to justify an ejection of the defendants, from a possession of forty years standing; to show with some degree of certainty the locality of this street?   It may have been as the circuit court observed to the jury, a street in contemplation, but it must have been so contemplated by some general plan of the town, which had at some period received the assent of the proprietors, or it must have been by virtue of some law, either of the former government or the present.   All the French villages, it is well known, were laid out on some general plan, with streets and squares of a particular and known width.   But it seems that the county surveyor, Mr. Cunningham, in acertaining the position of McDonough street, occasionally followed

the plan, and occasionally deviated from it. It seems that a survey of Perry street, according to the plat by which he made the survey in this case, would have passed through sundry houses of different citizens; he therefore at that point abandoned the survey of Evans, and regarded only the extent of front called for by the confirmations to the proprietors. In every other instance he disregarded the confirmations and followed the survey. It is not understood why an exception is to be made in favor of the proprietors of lots at the corner of Perry street, which is not conceded to those living on McDonough street. The width of the squares as confirmed, it seems from the statement of Mr. Cunningham, does not correspond in scarcely any instance with their width as actually used, and as laid down on the plat of survey by which the surveyor was guided in ascertaining the locality of McDonough street. Nor does the plat of Evans show the width of the squares or of the cross streets. Upon what principle then or what plan Mrs. Chauvin's tenements have been converted into a public highway, does not appear. Some light upon this subject perhaps would be shed by the plat made by the surveyor, which was examined by the jury, but which is not contained in the bill of exceptions.

We are not prepared to say that the instructions asked by the defendant should be given, at least, without an alteration of its language. It was couched in such general terms that it might be made to mean anything or nothing. The remarks made by the judge in refusing to give that instruction may also be correct enough, if properly understood, though it will admit of an interpretation calculated to mislead a jury. A street may certainly exist in contemplation; that is, it may have an existence, notwithstanding it has never been opened or used as a highway. But where this is so, it must certainly be in consequence of some general plan of the town, either made according to law, or springing into use by the general consent of the inhabitants, and adopted and recognized as such. Was McDonough street in existence at the place claimed by the plaintiff, either by actual use or by its being called for by the general plan of the town in 1812, when Tayon's lot was confirmed. It is not meant that the street must have been known by that name, for it is very unlikely that McDonough, Perry and Chauncy streets could have been known by these names at so early a day. The successes of these gallant naval officers having been mostly achieved, as history informs us, at a later period. The locality of the street, being as the record shows, on the outskirts of the village, must have been determined either by the fancy of the adjoining proprietors, according to the actual extent of the ground occupied by their buildings

and enclosures, or by a general plan to which they were bound to conform.    If such a plan existed,  Mrs. Chauvin  or those  from whom she derived title, had  no right  through  inattention,  ignorance or for  convenience, to erect buildings and make enclosures on such street or upon the lot of an adjoining propꞏietor, and if such was done it would clearly  not divest  the rights  either of the  public  or  of the adjoining lot owners.

The remark of the circuit judge in  refusing to give  the instruction asked by the plaintiff, we consider  equivalent  to giving  an  instruction. The jury look to the judge for an exposition of the  law, and  it is to be presumed, are also disposed to pay great deference to his opinions, either on the law or facts of the case.    For  the  court  to decline telling the jury that there was no evidence to rebut the claim of the plaintiff, but to accompany that refusal with the declaration that  by possibility *some* evidence had been given which  had not  been heard, or if heard  had escaped his memory, was certainly calculated to produce an impression exceedingly unfavorable to the defendants.

The judgment will  be reversed, and  the cause  remanded for a new trial.