KEYES-MARSHALL BROS. LIVERY COMPANY,
Respondent, v. ST. LOUIS & HANNIBAL RAIL-
ROAD COMPANY, Appellant.

St. Louis Court of Appeals, May 16, 1905.

1. **COMMON CARRIERS: Damage to Freight: Notice: Waiver.**
Where a clause in a bill of lading for the shipment of horses
over a railroad provided that in case of loss or damage, notice
should be given to the carrier within ten days thereafter, such
notice could be waived by the carrier after the time limit had
expired.

2. ———: ———: ———: ———. In an action against a rail-
road company for damage to horses shipped with such a pro-
vision in the bill of lading, the defendant, by going to trial on
the merits, denying all liability and saying nothing about notice,
waived the defense of want of notice and could not set up such
defense at a subsequent trial.

3. ———: **Limiting Liability: Liquidating Damages.** A contract
between a shipper and a common carrier, fixing the value of
the property shipped in order to liquidate the damages for
which the carrier would be liable if loss occurs, is valid if up-
held by a sufficient consideration.

4. ———: ———: ———: **Reduction of Freight Rate.** Whether
a reduction of the freight rate is sufficient consideration for
the shipper's agreement to liquidate the damages in case of

loss by the carrier's negligence is not determined. (Ward v. Railroad, 158 Mo. 226.)

5. ———: ———: ———: ———. Where a bill of lading provided for liquidating the damages in case of loss, reciting that such provision was in "consideration of a special rate named herein," but did not mention the rate, and it was not shown what the regular rate was, nor whether the amount actually paid was less than the regular charge, it did not amount to an agreement to carry for a diminished charge and showed no consideration for the liquidation.

Appeal from Audrain Circuit Court.—*Hon. Houston W. Johnson*, Judge.

AFFIRMED.

*Fry & Rodgers* and *J. D. Hostetter* for appellant.

(1) The court erred in giving instructions for the plaintiff as follows: (a) Plaintiff's instruction numbered 1 tells the jury that if they find from the evidence that "the plaintiff delivered to the defendant" the team of horses for transportation, etc., and that the horses were injured in transit by the defendant's negligence, then they should find for the plaintiff. (b) The court erred in giving plaintiff's instructions numbered 2 and 3. These instructions entirely nullified the written contract of shipment in any and all events, even though there was in point of fact a reduced rate of freight and even though the Hawkins Bros. signed the shipping contract the same afternoon the horses were delivered for shipment as testified to by the local agent. These instructions told the jury to disregard the contract entirely, if in point of fact the defendant had been negligent or careless in transporting the horses thereby causing them injury. These instructions further ignored the ten days notice clause, which under the authorities does not depend for its validity upon a reduced rate of

113 app—10

freight. Harned v. Railway, 51 Mo. App. 488. This requirement as to notice is held to be reasonable and valid, and does not depend on the existence of a reduced rate of freight for its validity. Ward v. Railway, 158 Mo. 229, 58 S. W. 28. (2) The shipping contract contained a recital that the rate is a special and reduced rate, and that in and of itself made out a prima facie case that it was in point of fact a reduced rate. The burden was then on the plaintiff to combat and contradict this prima facie showing made by the recitals in the contract. Unless contradicted such recitals become conclusive. Following cases are decisive of this point: Bowring v. Railway, 90 Mo. App. 324; Hart v. Railway, 112 U. S. 351. (3) There could be no waiver unless the act done or thing said, relied on as such waiver, took place within the time plaintiff was under obligation to give the notice, which was in this case within ten days after the loss or damage had been sustained. Hamilton v. Railway, 80 Mo. App. 597; Exchange Bank v. Insurance Co., 83 S. W. 535. (4) A reduced rate is a sufficient consideration to support a contract limiting the carrier's liability, and finding a maximum valuation on the live stock shipped. Wyrick v. Railway, 74 Mo. App. 406; Duvenick v. Railway, 57 Mo. App. 550. (5) The shipping contract must be taken as the sole evidence of the final agreement between the shipper and the carrier and all previous verbal contracts and conversations become merged in, and superseded by the provisions of the written contract. Helm v. Railway, 98 Mo. App. 419, 72 S. W. 148; Railway v. Cleary, 77 Mo. 634; McFadden v. Railway, 92 Mo. 343; O'Brien v. Kinney, 74 Mo. 125; Harrison v. Railway, 74 Mo. 364; Miller v. Railway, 62 Mo. App. 252; Gann v. Railway, 72 Mo. App. 54; Leonard v. Railway, 54 Mo. App. 294; Kellerman v. Railway, 136 Mo. 188, 34 S. W. 41, 37 S. W. 828.

*P. H. Cullen* and *Tapley & Fitzgerrell* for respondent.

(1) The defendant could not show a reduced rate without first showing an established rate legally in force. Paddock v. Railway, 60 Mo. App. 334. (2) The defendant's answer fails to show that there were two rates in force. The answer utterly fails to plead a state of facts showing a consideration. The contract introduced shows that horses were shipped at "tariff" rates. In that respect the contract differs in a material respect from some of the contracts heretofore construed. There is not a ray of testimony tending to show that rates were posted and no offer was made to show that plaintiff or Hawkins Bros. had any knowledge of the two oral rates which plaintiff offered to prove by oral testimony. Kellerman v. Railroad, 68 Mo. App. 255. (3) Where the rate charged for the carriage of freight under a contract limiting liability is the maximum or tariff rate allowed by law there can be no presumption that the charges have been reduced in consideration of the limitation of liability. (4) When "tariff" rate is mentioned the contract will be construed as calling for the legal rate fixed and established by law and no other can be enforced or insisted upon. Gerber v. Railway, 63 Mo. App. 145; Powder Co. v. Railway, 101 Mo. App. 442, 74 S. W. 492.

GOODE, J.—Both these parties are incorporated companies. The action is for the value of two horses alleged to have been injured in transportation over the defendant's railway by the negligence of the defendant's servants in operating a train on which the horses were hauled. The case was here on a former appeal and some of the facts are given in the opinion then delivered. [105 Mo. App. 556.] There was a reversal of the first judgment on a technical point. Before the second trial, new issues were framed on which evidence was received and

rulings made at that trial. In truth the contest was shifted to entirely different grounds by an amended answer. Mr. Marshall, one of plaintiff's officers, purchased a pair of horses in Pike county from Hawkins Bros., a livery firm of Bowling Green, paying $600 for them. The testimony goes to show the horses were in perfect condition when purchased by the plaintiff and also when received by the defendant company at Bowling Green for transportation to St. Louis. They were loaded on a Sunday afternoon and the train had not proceeded far when it was derailed at Gilmore, a station on the Wabash railroad. The car in which the horses were was sawed open, the horses taken out and kept a few days by a man at Gilmore and then shipped to St. Louis. There were some scratches on them when taken out of the car, but no other visible injuries. When they got to St. Louis they were wild and nervous and the heart of one of them could be heard to beat two feet away. This horse died soon afterwards from congestive chills, the veterinarian testified. The other horse proving to be unsafe for city use, was shipped back to the country and subsequently sold for $112.

The original answer was a general denial. After the cause was returned by this court for another trial, an amended answer was filed containing a general denial and two special defenses based on the receipt or bill of lading issued by defendant's agent when the horses were consigned to it for shipment. One of the defenses is that the plaintiff failed to give notice in writing of its claim to the general freight agent of the defendant, within ten days after the loss or damage to the horses was sustained. A clause in the bill of lading provided for notice. We hold that the defendant, by filing and going to trial on an answer which set up no defense based on failure to give notice, but relied on a denial that it had injured the horses, waived the defense of lack of timely notice. The point is made too late.

Defendant's counsel takes the position that the re-

quirement of notice of claim could not be waived by his client except by acts adapted to induce the belief that the notice would not be insisted on and done before the ten days had expired in which the notice was to be given. The argument is that under such circumstances notice of claim is held to be waived because the claimant failed to give it from being misled. No doubt conduct of that sort within the time limit will raise an estoppel against the defense of want of notice; or, if one pleases so to say, will waive the defense. Really the rule of law which then governs the decision rests on the principle of estoppel. But a waiver may occur as well after as before the time limit expires, if the party entitled to notice chooses to waive it. The essential fact is then one of intention on the part of the party entitled. If it is fairly inferable from the facts that said party intended to waive instead of insist on notice, he will not be heard to defend on the ground that no notice was given; and where the facts conclusively establish such an intention the defense may be overruled by the court. Suppose the first answer had stated that the railway company waived the right to notice; could it have set up such right as a defense in the second answer? No one will say it could; but according to the argument now advanced it might; inasmuch as it can be denied a defense on that ground only in case it induced the plaintiff not to give notice. In the case of Dezell v. Casualty Co., 176 Mo. 253, 75 S. W. 1102, the majority opinion says that if, after the time for giving notice has expired, the party entitled to notice does anything to show an intention to waive notice, it will be adjudged to have done so. In support of his position we are cited by defendants counsel to the cases of Hamilton v. Railroad, 80 Mo. App. 597; Exchange Bank v. Ins. Co., 83 S. W. 535, 109 Mo. App. 654. In each of those cases the court dealt with acts performed after the time for giving notice had expired and held that the defense of lack of notice was available. But the acts under review had no tendency either to

raise an estoppel or to show an intention on the part of the defendant to waive. The facts with which we are dealing are very different. The railroad company denied all liability and defended at the first trial exclusively on the merits of the case. After it had been ruled on the first appeal that the plaintiff had a prima facie case on the merits, defendant for the first time set up the purely technical defense of lack of notice. That course of conduct was inconsistent with an intention to rely on lack of notice and compels the conclusion that defendant cherished no such intention. We recognize the rule that a party sued may interpose in one answer as many consistent defenses as it has, and so decided in Carp v. Ins. Co., 104 Mo. App. 502, 79 S. W. 757. This we understand to be the doctrine of the majority opinion in the Dezell case, supra. But we hold that if a defendant in a case like this says nothing about want of notice of claim in its answer, but defends solely on the merits at the first trial, and its defense of non-liability on the merits proves precarious, it cannot afterwards raise the technical defense now presented. This we understand to be the doctrine of both the majority and minority opinions in the Dezell case, as it is of many other cases cited therein; notably Thwing v. Ins. Co., 111 Mass. 93, 110; Ins. Co. v. Dierks, 43 Neb. 745; Ins. Co. v. Hildebrand, 54 Neb. 306. Our view is that a defendant may be denied such a defense as is now asserted for acts done subsequent to the time in which notice was to be given, provided those acts contain the elements of an estoppel or show an intention to waive notice. Whether the denial should be rested on estoppel or on waiver will depend on the character of the acts. Fink v. Insurance Company, 60 Mo. App. 673; s. c., 66 Mo. App. 513; Equitable Life Society v. Winning, 58 Fed. 541. To exonerate the defendant from liability on the ground of want of notice at this stage of the case, would be to lose sight of the palpable fact that the de-

fendant never intended to rely on that point until after its defense on the merits looked unpromising.

The other special defense is that the horses were shipped at a reduced rate in consideration of an agreement that in the event of injury or damage to them the shipper would not hold the defendant liable for more than $75 for each horse. We copy the portions of the bill of lading material to this defense :

#### "ST. LOUIS & HANNIBAL RAILWAY COMPANY'S LIVE STOCK CONTRACT.

"Executed at Bowling Green Station, September 28, 1902.

"This agreement entered into by and between the St. Louis & Hannibal Railway Company, party of the first part, and Hawkins Bros., party of the second part, this 28th day of Sept., 1902.

"*Witnesseth*, that whereas, the St. Louis & Hannibal Railway Company, as a common carrier, transports live stock at less than its regular tariff rates when its liability is limited by contract as follows:

"That said party of the first part will transport for the said party of the second part two carload horses said to contain two head, together with the party or parties in charge thereof, as hereinafter provided, from Bowling Green, Mo. station to St. Louis, Mo. station, consigned to Keyes-Marshall Bros. & Co. at Union Stock Yards Mo. subject to minimum weights applying on cars of various lengths as per tariff and rules in effect on the date of shipment, at the through rate of ...........
Tff.... ........ Per...... ...... Car.... ........
from Bowling Green to St. Louis, Mo., the same being a special rate, less than the regular tariff rate applying on shipments not covered by the conditions and stipulations herein contained.

"And it is further agreed by and between the parties to this contract, that in further consideration of the

SPECIAL RATE named herein, the said second party will not hold the said first party liable for injury or damage to said stock from any cause whatsoever beyond the actual value of the stock, and that the maximum valuation of the several kinds and species of stock under this contract shall be as follows:

"Each Horse or Pony (gelding, Mare or Stallion) Mule or Jack ............. $75."

A list of the valuations of other animals follows.

It should be stated that the bill of lading was issued to Hawkins Bros., who were the agents of the plaintiff for the shipment of the horses, and that plaintiff is bound by the alleged agreement regarding the amount to be claimed as the value of the animals made by Hawkins Bros. if it was a legal agreement. It will be observed that the bill of lading recites that the rate charged was less than the defendant's regular tariff rate when its common law liability was not restricted. But the bill of lading contains no statement of what the rate of freight charged was. The testimony fails to show a definite rate was agreed on between Hawkins Bros. and the defendant's agent at Bowling Green prior to signing the bill of lading. We gather that the freight was to be paid by the consignee at St. Louis and that no rate was stipulated. The freight charge was 38 cents a hundredweight and the total charge $13.30. There was a conflict in the testimony as to when the bill of lading was signed. As said, the horses were delivered to the defendant for shipment on Sunday afternoon and were injured during that day or the succeeding night. One of the firm of Hawkins Bros. testified that on Monday after the accident occurred, the defendant's agent brought the bill of lading to him (the witness) to be signed and he signed it. If that was the fact, the agreement restricting defendant's liability would be invalid. The agent testified the bill of lading was signed on Sunday afternoon before the horses were loaded. That matter was for the jury on the conflicting testimony. What

is certain is that no rate of freight was inserted in the written contract or shown to have been fixed by verbal agreement. Nevertheless, the defendant contends the court erred in not limiting its liabiliity for the damage to the horses to the maximum of $75 for each horse, but, instead, directing the jury, in case they gave a verdict for the plaintiff, to assess the damages at a sum equal to the difference between what the horses would have been worth if they had been delivered to the plaintiff in good condition, and what they were worth in their actual condition when delivered. The court gave an instruction, too, that if the horses were injured by the defendant's negligence, the provisions of the written contract recited above were not binding on the plaintiff and constituted no defense to its action. In short, the court treated the attempted limitation of the defendant's liability for an injury done to the horses by the negligence of its employees as of no effect. This ruling is the principal assignment of error on the appeal. It is argued that as the receipt recited a reduced freight rate, this is prima facie proof that the horses were transported for less than the usual freight in consideration of a partial release of the defendant's liability, and it was for the jury to say whether, in truth, the rate was reduced below the regular charge. Contracts between a shipper and a common carrier fixing the value of the property shipped in order to liquidate the damages for which the carrier will be liable if loss occurs through its negligence, have been upheld in this State. But to be valid, such contracts must rest on a consideration, of course, and be entered into by the shipper before or at the time the goods were delivered for transportation. For years the law was that a reduction of the freight rate was sufficient consideration for the shipper's agreement liquidating the damages to be paid. [Harvey v. Railroad, 74 Mo. 538; McFadden v. Railroad, 9 Mo. 343.] An agreement of this sort was regarded as not releasing the carrier from liability for its own negligence, but as recognizing its

liability and stipulating the damages to be paid for the consequences. [Kellerman v. Railroad, 136 Mo. 177, 34 S. W. 41, 37 S. W. 828.] Other courts have sanctioned such an arrangement to the extent of holding that if the shipper obtains a low rate by representing the property to be of a certain value, it is unjust to require the carrier to pay more in case of loss. And the signing by both parties of a bill of lading stating the value of the property and that the carrier's liability is limited to the value stated in consideration of a reduced rate, is assumed, in the absence of proof of imposition or fraud, to show the shipper represented the property to be of the value mentioned. [Hart v. Railroad, 112 U. S. 331.] Intimations occur in the decisions of the courts of this State that this is the principle underlying the rule that agreements liquidating the amount to be paid by a common carrier for the loss of freight by its negligence, do not infringe the law's policy to deny common carriers the right to contract against liability for negligence. Study of the Missouri cases in which such agreements were alleged in defense of the action, show that they have been closely scrutinized to detect if they were, in truth, supported by a valid consideration and assented to by the shippers in advance. In the present instance, though the bill of lading recites that the rate was reduced, it fixes no rate, and, might have been carried out by the defendant by an inconsiderable diminution of the regular charge on non-release shipments. It was not shown what the regular charge in the defendant's published schedule of rates was on either release or non-release contracts, or whether it published its rates as required by the statutes. Neither was any competent proof of these facts tendered. [R. S. 1899, secs. 1136, et seq.] The defendant's superintendent testified that the horses were carried for thirty-eight cents a hundredweight and that the rate was reduced because the valuation was $75 a horse. But he said the total freight was $13.30. Now the horses weighed about 1,150 pounds

each or 2,300 pounds; and the total freight at thirty-eight cents per hundredweight would be $7.94, or $5.36, less than the sum charged. This shows that if the defendant had a low rate of thirty-eight cents a hundredweight for release contracts, the plaintiff's horses were not hauled at that rate. Regarded in any aspect, the evidence fails to show a reduced charge or any charge for carriage agreed to by the parties. It fails to show that the damages were liquidated at a certain sum in case of loss, as only a maximum value was fixed. This left the defendant free to raise the question that the horses were worth less than $75 each. Now, some decisions hold that the damages the carrier may have to pay must be fixed at a certain sum. In truth this was intimated by our Supreme Court in the Kellerman case (136 Mo. 177). But the fact fatal to the defense according to all courts is, that there was no agreement to carry for a diminished charge and, as far as appears, the schedule rate on release shipments was exceeded in the charge exacted.

It is argued that our Supreme Court appears to have overturned by its latest decision on the subject, the doctrine that a reduction of the freight charge is a valid consideration for an agreement between a railway company and a shipper limiting the amount of the former's liability in case of a negligent loss of the property carried. [Ward v. Railroad, 158 Mo. 226, 58 S. W. 28.] In that case there was no reduction of freight accorded to the shipper, the opinion states. Still, language is used which casts doubt on the validity of a contract liquidating a railway company's liability for the negligent loss of property in consideration of a lower charge for carriage.

Exceptions were saved to some rulings of the lower court on the reception of evidence, but we do not deem them of sufficient importance to call for comment.

As to the contention that one of the horses died from congestive chills and not from injuries received

in the wreck, we state that though the defendant's position is supported by testimony, the inference that its death was due to the latter cause might be drawn from the evidence, and as two juries have found that it was, we will not interfere on that ground with the verdict.

The judgment is affirmed. All concur.