## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

MARCH TERM, 1906.

---

*(Continued from Volume 118.)*

---

FARMERS BANK OF LADDONIA, Respondent, v. ST. LOUIS & HANNIBAL RAILWAY COM-PANY, Appellant.

**St. Louis Court of Appeals, May 8, 1906.**

1. **JURISDICTION OF PERSON: Waiver.** Where an action was brought against two corporations in a county where one of them had no office, officer or agent, and afterwards the suit dismissed as to the other defendant, the want of jurisdiction over the remaining defendant was waived by a letter of such defendant's attorney expressly agreeing to waive it.

2. ————: ————. And in such case, where the defendant filed answer and went to trial, it thereby waived the want of jurisdiction.

3. **BANKS: Ultra Vires: Banks Engaging in Commerce.** In an action by a bank against a railroad company for damages caused by delay in shipping a lot of cattle, where the evidence was conflicting as to whether the bank bought the cattle to sell, or held them as a pledge for the payment of an overdraft, and the jury were instructed that if the bank was owner of the cattle they should find for the defendant, a verdict for the plaintiff is conclusive that it held them as a pledge, that its transaction was not *ultra vires*, and it was not prevented from recovery by the provisions of section 1291, Revised Statutes 1899.

4. **PRACTICE: Instruction: Contradictory Instructions.** In an action against a railroad company for damages caused by delay in shipping a carload of cattle, an instruction to find for plaintiff if the cattle were "injured and damaged on account of the delay," was not inconsistent with an instruction for the defendant that no damage could be allowed on account of the cattle being crippled or injured in transportation.

5. ———: ———. An instruction which was sufficiently explicit to be clearly understood was not erroneous, though in one part of the instruction the necessary explanatory word was omitted.

6. ———: **Expert Witness.** In an action against a railroad company for damages caused by delay in shipping cattle, a witness who went with the shipment, saw the cattle on the day of sale and was a shipper of cattle of fifteen years' experience, was a competent witness to give his opinion as to the state and fluctuations of the market on that day.

7. **COMMON CARRIERS: Notice of Damage.** Where a bill of lading for a carload of cattle provided that the shipper, as a condition precedent to his right to any damage for injury to the stock, should within, ten days, give notice in writing verified by affidavit to the agent of the carrier, the giving of such notice was a condition precedent to the shipper's right to recover damage caused by delay in transportation.

8. ———: ———: **Estoppel.** But where a notice, not properly signed or sworn to, was sent to the railroad company's agent, was received and retained by him without objection to its form or substance, the railroad company was estopped to object to the sufficiency of the notice.

9. ———: **Limiting Liability: Through Carriage.** Where a bill of lading for a carload of cattle provided that they should be shipped from the point of shipment to the point of destination, the receiving carrier was liable for damage caused by delay in shipment which occurred over a connecting line, although the bill of lading provided it should be liable only for loss occurring on its own line.

10. ———: ———: **Reduced Rate.** Where a bill of lading for the shipment of a carload of cattle stipulated that in consideration of reduced rate the loss on account of shrinkage should be limited to a certain amount, and where the regulation rate was not stated in the bill of lading and there was no evidence that the rate paid was a reduced one, the railroad company's liability for shrinkage caused by delay was not limited to any sum less than the actual damage suffered.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

AFFIRMED.

*J. D. Hostetter* for appellant.

(1) The demurrer to the evidence should have been sustained as to the St. Louis & Hannibal Railway Company. Kellerman v. Railway, 136 Mo. 189, 34 S. W. 41, 37 S. W. 828; Nines v. Railroad, 107 Mo. 475, 18 S. W. 26; Western Sash & Door Co. v. Railway, 177 Mo. 641, 76 S. W. 998. Particularly by reason of the lack of jurisdiction, section 997, Revised Statutes 1899, as amended by Laws 1903, p. 115, provides that suits against a railroad company shall only be commenced against it in some county where such corporation shall have or usually keep an office or agent for the transaction of its usual business. (2) Upon the undisputed evidence in this case, the bank, the sole plaintiff here, was neither entitled to have, nor to maintain this action. Ullman v. Fair Assn. 167 Mo. 287, 66 S. W. 949. (3) The court gave improper and illegal instructions at the request of the plaintiff. The court refused a proper instruction asked by the St. Louis & Hannibal Railway Company. Bowring v. Railway, 77 Mo. App. 250. (4) There was no contract here to carry beyond the end of appellant's own line. Such an agreement was valid even, under the laws of Missouri, then in force. McCann v. Eddy, 133 Mo. 68, 33 S. W. 71; Railway v. McCann, 174 U. S. 580; Railway v. Pierce, 192 U. S. 189.

*P. H. Cullen* for respondent.

(1) This action being against a common carrier for failure to deliver live stock intrusted to it for carriage it sounds in tort and is not an action on the contract, and plaintiff makes out his case without seeking aid

from the contract of shipment whereby plaintiff became (as defendant alleges) the owner of the cattle. Clark v. Railway, 64 Mo. 440; Heil v. Railway, 16 Mo. App. 367; Mickey v. Railway, 35 Mo. App. 85; Witling v. Railway, 28 Mo. App. 103; Nichols v. Railway (Ga.), 15 S. E. 309; 10 Cyc., 1162, note 70. (2) Neither party will be permitted to set up the defense of *ultra vires* while retaining the fruits and benefits of the contract. York v. Bank, 105 Mo. App. 127, 79 S. W. 968; Russell v. Cassiday, 108 Mo. App. 577, 84 S. W. 171; Land Co. v. Wells (Idaho), 60 Pac. 87; McCarthy v. Lavasche, 89 Ill. 270; Bank v. Elevator Co., 90 Mich. 550; Eureka Works v. Bresnahan, 60 Mich. 332; Day v. Buggy Co., 57 Mich. 146; Arms Co. v. Boston, 63 N. Y. 62; Steam Nav. Co. v. Weed, 17 Barb. 378; Lewis v. Savings Assn., 99 Wis. 203, 39 L. R. A. 559; Min. Co. v. Bank, 96 U. S. 648; Lurton v. Loan Co., 87 Ill. App. 345; Same case affirmed, 187 Ill. 141; Manchester v. Railroad, 66 N. H. 100; Bank Co. v. Wright, 58 S. W. 755. (3) The defendant having expressly agreed not to raise any point as to jurisdiction and having failed to demur, or to raise such an issue by the answer, is forever precluded from insisting that the suit was brought in the wrong forum. It expressly and impliedly waived this point. Markey v. Railroad, 185 Mo. 348, 84 S. W. 61; Baisley v. Baisley, 113 Mo. 550, 21 S. W. 29; Life Assn. v. Shelton, 84 Mo. App. 639. (4) The testimony of the witness Gill was clearly competent and admissible. He was qualified. McCrary v. Railway, 109 Mo. App. 571, 83 S. W. 82; Davis v. Railroad, 170 Ill. 595; Whitney v. Thatchar, 117 Mass. 523; Alfonso v. U. S., 2 Story 421-426; "Cliquot's Champaign," 3 Wall. 114; Lush v. Druse, 4 Wend. 317; 2 Elliott on Evidence, sec. 1302. (5) The defendant having contracted to carry to National Yards it is liable for delay occurring at any point on the route, though not on its own line. R. S. 1899, sec. 5222; McCann v. Eddy, 133 Mo. 59, 33 S. W. 71; McCann v. Eddy,

(S. C.), 174 U. S. 580; Eccles v. Railway, 72 Mo. App. 296; Watkins v. Railway, 44 Mo. App. 216; Hendrix v. Railroad, 107 Mo. App. 127, 80 S. W. 970; Landa v. Holck & Co., 129 Mo. 663, 31 S. W. 900; O'Connor v. Railway, 111 Mo. 185, 20 S. W. 16. (6) A clause in a bill of lading limiting the carriers liability will not be held valid on the ground that a reduced rate was intended, no rate being specified and none being talked of by the parties. Powder Co. v. Wabash, 101 App. 442, 74 S. W. 492. (7) Such contracts have not found favor and have never been enforced by this court since the decision in the Ward case, 158 Mo. 6. Botts v. Railroad, 106 Mo. App. 397, 80 S. W. 976; Rice v. Railroad, 106 Mo. App. 371, 80 S. W. 974; Summers v. Railroad, 79 S. W. 480. (8) The shipper must have had the alternative of shipping his stock under the common law liability and at a reasonable rate or of accepting a contract of limited liability in consideration of the lower rate. He must have real freedom of choice and the alternative offered must be reasonable. Railway v. Cravens, 57 Ark. 112, 38 Am. St. 230; Railway v. Spaun, 57 Ark. 127, 20 S. W. 914; Express Co. v. Wallace, 60 Ark. 100; Railway v. Dill, 48 Kan. 210; 29 Pac. 148; Express Co. v. Nock, 2 Duvall, 562, 87 Am. Dec. 510; Railway v. Ins. Co., (Miss.), 30 South. 43. Knell v. Steamship Line, 33 N. Y. Sup. Ct. 423; Kimball v. Railway, 26 Vt. 247, 26 Am. Dec. 567. (9) There was no proof that defendant had made publication of the rates, and hence there was no established rate from which a reduction could be made, and the contract is therefore void under the most strict decisions in favor of such contracts. 3 U. S. Annotated Statutes, p. 827, sec. 6 and notes; Railroad Company, v. Horne, 106 Tenn. 73; Railroad v. Harrison, 119 Ala. 539; Railroad v. Helfley, 158 U. S. 98; Gerber v. Railroad, 63 Mo. App. 145. (10) Recitals in the contract as to rate do not conclude the shipper. The consideration clause is open to explanation and contradiction by parol testimony. McFaden

v. Railroad, 92 Mo. 343; Railway v. Reid, 61 Ga. 377, 17
S. E. 934; Railway v. Crawford, 65 Ill. App. 113; Railway v. Reynolds, 17 Kans. 251.

BLAND, P. J.—The suit is to recover loss on account of shrinkage caused by unreasonable delay in transporting over defendant's road, two hundred and twelve head of fat cattle, delivered to it at Perry, Missouri, by the plaintiff for carriage and delivery to the National Stock Yards, at East St. Louis, Illinois, and for loss of a better market. Defendant's road does not run to East St. Louis. It connects with the Wabash railroad (which runs into East St. Louis) at Gilmore, Missouri, and freight received by the defendant at Perry, consigned to East St. Louis, is hauled to Gilmore and there delivered to the Wabash railroad to be carried to its destination. This course was pursued with the shipment of cattle in question. The suit was brought against both the defendant and the Wabash Railroad Company. On the trial an instruction, in the nature of a demurrer to plaintiff's evidence, was sustained as to the Wabash Railroad Company and the suit as to it was dismissed.

It appears from the plaintiff's evidence that the cattle were loaded in ten of defendant's cars at Perry on Sunday, June 5, 1903, between ten and eleven o'clock a. m., and were started for Gilmore between twelve and one o'clock on the same day. They arrived at Gilmore at nine or ten o'clock of that day and laid over there until after daylight the following Monday morning, when they were picked up by a Wabash train and carried to East St. Louis, arriving at the National Stock Yards at 12:30 o'clock. On their arrival they were immediately unloaded into yards and sold before two o'clock, the hour then fixed for closing live stock sales for the day. The evidence tends to show that, ordinarily, and by the exercise of ordinary diligence, live stock loaded and shipped at Perry at the hour these cattle were loaded, should arrive

at East St. Louis between seven and eight o'clock on the morning of the following day; and on account of the delay at Gilmore the cattle lost, by shrinkage, from twenty-five to forty pounds in weight per head more than they would have lost had there been no delay. The evidence further tends to show that on account of the cattle arriving so near the hour of closing sales for the day, their sale had to be rushed and they brought a less price per hundred pounds then they would have brought if they could have been put upon the market in the morning.

The jury found the issues for the plaintiff and assessed his damages at five hundred dollars. Defendant appealed to this court, after taking the usual steps to preserve its exceptions.

1. It appears from the evidence, and it is admitted, that the defendant railroad does not enter Audrain county (the county where the suit was brought and tried) and has no office, officer or agent in said county; for these reasons, on the dismissal of the case against the Wabash Railroad Company, defendant moved the court to dismiss the suit against it for the want of jurisdiction of the person of the defendant. Want of jurisdiction of the person of a defendant, if it appears on the face of the petition, should be taken advantage of by demurrer; if it does not appear on the face of the petition, it should be raised by the answer; and if not taken advantage of either by demurrer or by answer; the objection is deemed to have been waived. But it is contended that the want of jurisdiction did not appear until the case was dismissed against the Wabash Railroad Company, and that the defendant did not know, and could not know, the Wabash Railroad Company was made a party defendant for the purpose of bringing the defendant within the jurisdiction of the court, and that the objection was raised at the earliest possible moment. Conceding this to be so, as jurisdiction of the person may be

waived, the following letter of defendant's attorney, in answer to one written to him by plaintiff's attorney, we think clearly shows that jurisdiction of the Audrain Circuit Court over the person of the defendant was waived, in this particular suit, in advance of its commencement:

"Bowling Green, Missouri, Nov. 4, 1904.

"Dear Sir and Friend: Your favor to hand relative to your proposed suit against the St. Louis & Hannibal and Wabash for Edgar Wilburn. I am aware of the outstanding claim and we have always contended that the delay was on the Wabash if at all, and as between the two companies, the Wabash is liable. I would like for you to look to the Wabash for your claim, but if you think you want to join our company as a defendant, I would just as soon have it at Mexico as anywhere and will raise no point on jurisdiction of our company.

"Yours,

"J. D. Hostetter."

That Mr. Hostetter, as the attorney of the defendent had authority to waive jurisdiction of the person of the defendant is settled by the case of Markey v. Railroad, 185 Mo. 348; and we think too, that the appearance of the defendant by filing its answer and participating in the trial to its conclusion conferred jurisdiction on the court. [Banker's Life Ass'n v. Shelton, 84 Mo. App. l. c. 639, and cases cited.] Parenthetically, it should be stated that Mr. Hostetter was not present at the trial of the case, did not participate in it, and the attorneys who appeared for the defendant were unaware of his letter until it was introduced in evidence.

2. There are two lines of testimony in the record in respect to the interest of the plaintiff bank in the cattle; one tends to prove that it purchased the cattle outright for the purpose of making a profit; the other tends to show that a Mr. Wilburn, a customer of the bank, purchased the cattle for himself on his own account, but not having money in the bank, or elsewhere, sufficient to

pay the purchase price, drew a draft on the bank for something over thirteen thousand dollars, in part payment of the cattle, and when the bank was informed of the draft, it agreed to honor it, provided Wilburn would agree the cattle might be shipped in the name of the bank, and Wilburn consented that they might be so shipped, and they were shipped under this agreement and the proceeds of the sale deposited in the Bank of Commerce, in the city of St. Louis, to the credit of the plaintiff bank, by its direction. The bank was incorporated under the laws of the state. Section 1291, article 8, entitled "Banks of Deposit and Discount" (R. S. 1899) provides as follows:

"No corporation now existing nor any hereafter organized under any law of this State, whether general or special, as a bank or to carry on a banking business, shall employ its moneys, directly or indirectly, in trade or commerce, by buying and selling ordinary goods, chattels, wares and merchandise, or by owning or operating industrial plants: Provided, that it may sell all kinds of property which may come into its possession as collateral security for loans, or in the ordinary collection of debts."

Defendant contends that the bank being prohibited by this statute to buy cattle for a profit, the contract of purchase was *ultra vires,* and that the shipment was a continuation of the unlawful act of the bank, and for this reason it cannot recover. On this feature of the case the court gave the following instruction at the request of the defendant:

"2. The court instructs the jury that if you believe from the evidence in this case that the plaintiff bank was the owner of the cattle shipped on the fifth day of June 1904, from Perry, Missouri, to the National Stock Yards, then you will return a verdict for the defendant."

The jury necessarily found that the bank was not the owner of the cattle, but that they were held by it as

a pledge to secure Wilburn's overdraft. There is substantial evidence in support of this finding, and as the. bank might hold the cattle as a pledgee for the payment of the. overdraft, even if we concede that the contract of shipment was ultra vires, and that defendant may take advantage of it, which we do not, the verdict of the jury is conclusive that the bank did not purchase the cattle for the purpose of making a profit on them.

3. The court gave the following instruction for the plaintiff:

"2. The court instructs the jury that if you find the facts hypothecated in the first instruction given on behalf of the plaintiff to be true, and if you further find and believe from the eivdence that the plaintiff contracted with the defendant at Perry, Missouri, for the transportation of two hundred and twelve head of cattle from Perry, Missouri, to National Stock Yards, Illinois, then it was a duty of defendant to use reasonable diligence to transport said stock to National Stock Yards, without unnecessary delay and within a reasonable time. And if you believe from the evidence in this case that the defendant failed to forward same to National Stock Yards within a reasonable time, but on the contrary said stock were kept in transit for an unreasonable length of time; and if you believe that said stock were delayed at Gilmore for a period of from ten to twelve hours; and if you further believe that the delay in shipping said cattle was caused because defendant failed to exercise ordinary care and diligence and if you find that the cattle were injured and damaged because and on account of this delay you should return a verdict for the plaintiff."

And the following for the defendant:

"3. The court instructs the jury that you cannot allow the plaintiff under the evidence in this case any damage on account of steers or cattle being crippled or injured in transportation."

Defendant makes the point that these instructions are inconsistent, in this, that plaintiff's instruction authorized an award for damages for any injury to the cattle, caused by delay, while its instruction denies the right to damages for cattle crippled or injured in transportation. Plaintiff's instruction limits the recovery to damages resulting from mere delay in transportation, which includes only loss by shrinkage and loss of a better market. Defendant's instruction denies the right of plaintiff to recover damages for cattle crippled or injured in transportation. As plaintiff's instruction did not include damages for crippling or other physical injury to the cattle, there is no discrepancy or inconsistency in the two instructions.

4. Plaintiff's instruction on the measure of damages is as follows:

"4. If you find for the plaintiff then in assessing its damages you may take into consideration the amount the cattle shrunk in weight, if any, on account of the delay, if any, and if you find from the evidence that said cattle sold for less sum then they would have sold had they been transported within a reasonable time and and arrived earlier you may take that into consideration, and you will allow plaintiff as its damages such sum as you may find from the evidence equals the difference in value, if any, between the value of said cattle in the condition they were in when delivered at National Stock Yards and after being delayed, and their value had they been delivered at National Stock Yards without delay."

This instruction is criticised on the ground that the phrase "without delay" in the last line should have been preceded by the word "unreasonable." We do not think the instruction is open to this criticism. The right of plaintiff to recover at all was predicated, by the instructions, on the fact that there was an unreasonable delay in the transportation of the cattle; and the jury were required to find there had been such unreasonable delay

to warrant a finding for the plaintiff, therefore, the instruction on the measure of damages presupposed that the jury should first find from the evidence that there had been an unreasonable delay, and hence there was no occasion to repeat this matter in said instruction.

5.   May Gill, a witness, testified that he was a farmer, had been shipping cattle to East St. Louis for fifteen or sixteen years, and that he accompanied the shipment of the two hundred and twelve head for plaintiff.   Witness gave it as his opinion that if the cattle had arrived in the morning and been given time to eat and drink and rest before being offered for sale, they would have sold better than they did.   In respect to the decline in the market on the day the cattle were sold, over the objection of the defendant, witness was permitted to testify, that the market was "pretty good that day," and in his judgment there was a decline at the time the cattle were sold, of ten cents on the hundred; that he did not know just what the fluctuation of the market was that particular day but he knew there was a difference and was satisfied that the cattle did not have an opportunity to "fill and sell" for what he considered them worth.   The objection to his evidence was made on the ground that witness did not show he was acquainted with the market on that particular day, and was not qualified to give an opinion in respect thereto.   The witness had from fifteen to sixteen years' experience as a shipper of cattle to market and must have paid some attention to the market during all these years.   He was present at East St. Louis on the day in question, saw the cattle sold, knew their condition when shipped and when they arrived, and we think by his past experience, both as to markets and the condition of the cattle when shipped, witness was qualified to give the testimony he gave. His evidence too, is corroborated by that of Woodson, who sold the cattle, and who testified that on account of their late arrival there was no time to work on the buy-

ers, and that they would have sold for ten or fifteen cents more if they had arrived in time to have been shown to different buyers; and that the best market hour for the sale of cattle was at nine o'clock in the morning, before the packers had all they wanted.

6. An article in the bill of lading provides as follows:

"And it is further agreed by and between the parties to this contract, that in consideration of the covenants herein set forth, said second party expressly agrees that as a condition precedent to his right to any damage for any loss or injury to the stock shipped under this contract during transportation thereof, he will give notice in writing of his claim therefor, verified by affidavit, to the general freight agent of the said first party within ten days after said loss or damage has been sustained."

The evidence shows that Woodson, at the request of Wilburn, made out a detailed statement of the sale and losses on the cattle and inclosed it in a letter to defendant's claim agent, within ten days from the date of the shipment. The claim was signed by Woodson but was not sworn to by any one. The letter accompanying the statement informed the claim agent that the claim was made in Wilburn's behalf and at his request, and the evidence shows that it was received by defendant's claim agent and retained by him without objection to its form or substance, or the source from which it emanated, and it is further shown that the claim agent acted on the notice and corresponded with Woodson with a view of ascertaining the facts in respect to the claim. On this branch of the case, the court instructed the jury as follows:

"6. The court instructs the jury that if you believe from the evidence that on June 9, 1904, the National Live Stock Commission Company, at the request of Mr. Wilburn, or the plaintiff, wrote to H. M. Modisett a

letter introduced into the evidence, dated June 9, 1904, and sent therewith a copy of the account of sales and a claim for damages introduced in the evidence, and that said H. M. Modisett received same and he was then the general freight and passenger agent of the St. Louis & Hannibal Railway Company, and if after receiving same he made no objection to the form of the claim but agreed to investigate same then you are not warranted in finding for the defendant on the theory that it was not given notice of this claim for damages within ten days after it accrued."

The giving of the notice of its claim for damages was a condition precedent to plaintiff's right of recovery. [Smith v. Railway, 112 Mo. App. 1. c. 614, and cases cited.] The notice given was not signed by the plaintiff, or sworn to by any one, and therefore did not fill all the requirements in the stipulation contained in the bill of lading, which was signed "Farmers Bank of Laddonia, by E. Wilburn, shipper." Wilburn was a proper person, under the circumstances, to make the claim for damages and give notice thereof. He might do this through his agent, Woodson. The defendant knew, therefore, that the claim did not come from an unauthorized person, and by retaining it without objection and acting upon it, we think it is estopped to object to the form and sufficiency of the notice. [Summers v. Railroad, 79 S. W. 481.]

7. The following stipulations are in the bill of lading, to-wit:

"And it is further understood and agreed, by and between the parties hereto that if the destination of the aforesaid stock be located on the line of the St. Louis & Hannibal Railway, then the St. Louis & Hannibal Railway Company agrees to deliver same at destination after payment of proper charges by said consignee, but if the ultimate destination of said stock be located beyond the line of the St. Louis & Hannibal Railway, the St. Louis

& Hannibal Railway Company hereby agrees to deliver same to the next connecting carrier; and it is understood and hereby agreed that the St. Louis & Hannibal Railway Company shall be held liable under this contract only for loss or damage occurring on its own line, and while the said stock is in its actual custody, and that the duty and liability of said Company shall absolutely cease and terminate upon delivery of the aforesaid stock to its next connecting line." etc.

"It is further agreed and understood by and between the parties, hereto, that the party of the first part does not undertake to forward the aforesaid stock by any particular train nor at any specified hour; neither shall said first party be responsible for the delivery of said stock within any specified time nor for any particular market, nor to furnish any particular kind or class of cars for the transportation of said stock."

There is no evidence in the record contradicting or varying these terms of the bill of lading, and the evidence shows there was no delay in transporting the cattle from Perry to Gilmore, but there was a delay of from ten to twelve hours at Gilmore, waiting for the arrival of a Wabash train to carry the cattle on to East St. Louis. The defendant did not agree that close connection should be made with the Wabash railroad at Gilmore, but it was expressly stipulated that it would not guarantee at what hour or to what train the cattle should be delivered to the Wabash Railroad Company. If we should give effect to these terms of the contract, we would be bound to hold that the defendant performed its whole duty by hauling the cattle to Gilmore on time; but by the first clause in the bill of lading, the defendant agreed to transport the cattle from "Perry, Missouri, station to National Stock Yards, Ill., station," at a through rate of tariff. This stipulation in the bill of lading, under the provisions of section 5222, R. S. 1899, made the defendant liable for any loss, damage or injury to the cattle,

caused by its own negligence or the negligence of any other carrier to which it might deliver the cattle for transportation, and nullifies the stipulations in the bill of lading which attempt to restrict its liability. A bill of lading in all respects like this one was recently so construed by us in the case of Ingwersen v. Railway, 116 Mo. App. 139, 92 S. W. 357.

In McCann v. Eddy, 133 Mo. 59, 33 S. W. 71, it was ruled that under this section of the statutes, the carrier may limit its duty and obligation to its own line, but it cannot contract for a through shipment to a point beyond its line, and at the same time exempt itself from liability for the negligence of the connecting carrier which completes the transportation. The case was taken to the Supreme Court of the United States on writ of error, and the judgment of the Missouri Supreme Court affirmed in Missouri, Kansas & Texas Railway v. McCann, 174 U. S. 580. It was also followed in the case of Marshall & Michel Grain Co. v. Railway, 176 Mo. 480, 75 S. W. 638. See also Bank v. Railway, 72 Mo. App. 92, and Marshall & Antles v. Railway, 74 Mo. App. 81, where the Kansas City Court of Appeals put the same construction upon the statute. Under the statute the defendant is liable for any damage to the cattle caused by unreasonable delay on any part of the route from Perry to East St. Louis, notwithstanding its attempt to contract against liability for delay occurring on the line of the connecting carrier, and the instruction in the nature of a demurrer to the evidence was properly overruled.

8. The bill of lading stipulates, in substance, that in consideration of a reduced rate, the shipper agreed that defendant should not be liable for shrinkage caused by delay exceeding twenty pounds on each animal. On the strength of this stipulation defendant requested an instruction limiting a recovery on account of shrinkage not to exceed twenty pounds on each animal. The re-

fusal of this instruction is assigned as error. There is no evidence that the cattle were shipped at a reduced rate, unless the mere recital in the bill of lading is sufficient evidence to show that the rate was a reduced one. The regular rate is not stated in the bill of lading, and there is no evidence in the record to show what the regular rate was.

In Livery Co. v. Railroad, 113 Mo. App. 144, 87 S. W. 553, where the bill of lading was a duplicate of this one, except as to name of shipper, etc., we held:

"Where a bill of lading provided for liquidating the damages in case of loss, reciting that such provision was in 'consideration of a special rate named herein,' but did not mention the rate, and it was not shown what the regular rate was, nor whether the amount actually paid was less than the regular charge, it did not amount to an agreement to carry for a diminished charge and showed no consideration for the liquidation."

On the authority of this case and the authority of the cases cited in the opinion in the case, the defendant's liability for shrinkage caused by delay was not limited by the terms of the bill of lading to any sum less than the actual damages occasioned from such shrinkage.

No reversible error appearing in the record, the judgment is affirmed. All concur.